Paul S. Chan - State Bar No. 183406
   pchan@birdmarella.com
Julia B. Cherlow - State Bar No. 290538
   jcherlow@birdmarella.com
Heejin H. Hwang - State Bar No. 349455
   hhwang@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiff TruConnect
Communications, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TRUCONNECT COMMUNICATIONS, INC., Plaintiff, vs. UNIVERSAL SERVICE ADMINISTRATIVE COMPANY, Defendant. | CASE NO. **COMPLAINT** |

4118015.6

COMPLAINT

Plaintiff TruConnect Communications, Inc. ("TruConnect" or "Plaintiff"), by and through its attorneys, for its complaint ("Complaint") against defendant Universal Service Administrative Company ("USAC" or "Defendant") alleges the following:

**INTRODUCTION**

1. Plaintiff TruConnect brings this action against Defendant USAC under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, in connection with the agency's negligent operations of technological systems that help provide mobile and internet services to low-income consumers.

2. USAC was the administrator of the Affordable Connectivity Program ("ACP") and is the administrator of Lifeline, which are federally funded programs that offer subsidized wireless telephone services and internet services to income-eligible subscribers. ACP and Lifeline are programs of the Federal Communications Commission ("FCC"), but are wholly administered by USAC.

3. ACP and Lifeline operate through providers like TruConnect, who directly enroll consumers for ACP or Lifeline and provide those consumers with access to free or low-cost mobile or internet services.

4. As the administrator of ACP and Lifeline, USAC is required to maintain the National Lifeline Accountability Database ("NLAD") and National Verifier ("NV") systems. The NLAD and NV are platforms that TruConnect and other providers who participate in ACP and Lifeline use to determine an applicant's eligibility for ACP or Lifeline and prevent duplicative support.

5. Unfortunately, beginning around December 2022, USAC's negligence caused numerous and ongoing technological issues to plague the NLAD and NV systems. *First*, the NLAD and NV systems failed to identify customers enrolled in California's parallel "LifeLine" program ("California LifeLine"). Subscribers of the California LifeLine program are also eligible to receive ACP benefits, and USAC must update the NLAD and NV systems with the California LifeLine files to ensure

4118015.6

accurate verification checks. USAC failed to timely process the California LifeLine program files into the NLAD and NV, such that TruConnect could not verify those California customers' eligibility for ACP and was unable to enroll them for ACP benefits.

6. *Second*, USAC allowed system defects and outages that rendered the NLAD and NV platforms inoperable for extended periods of time.

7. *Third*, in February 2024, USAC undertook modifications to the NLAD and NV systems in response to an announcement that ACP would end in June 2024 due to a lack of federal funding. The FCC planned to freeze all new ACP enrollments in February, and the modifications undertaken by USAC were intended to conform the NLAD and NV systems to this freeze on new enrollments. The modifications, however, were defective and led to erroneous eligibility determinations for continuing users of ACP who sought to transfer their benefits to TruConnect.

8. As the administrator of ACP and Lifeline and owner of the NLAD and NV systems, USAC has a special relationship with providers including TruConnect because providers cannot enroll customers in ACP or Lifeline without the NLAD and NV systems. USAC thus owed TruConnect the duty to exercise reasonable care to operate and maintain the NLAD and NV systems and to not negligently undertake modifications to the NLAD and NV systems.

9. USAC breached its duty of care to TruConnect by failing to exercise reasonable care in maintaining and administering the NV, NLAD, and related infrastructure. These failures include, but are not limited to, the following:

a. Between December 2022 and July 2023, USAC failed to exercise due care in timely processing the California LifeLine program files.

b. Between January 2023 and March 2023, USAC negligently maintained its technological infrastructure, which rendered the application program interface ("API") calls to the NV inoperable and resulted in erroneous eligibility

denials.  Additionally, throughout 2024 and 2025, USAC's negligent maintenance of its technological infrastructure led to ongoing service outages.

          c.     In February 2024, USAC negligently implemented modifications to the NV and NLAD electronic systems, which resulted in erroneous ACP eligibility determinations.

10. USAC's tortious conduct has seriously harmed TruConnect.  From April 2023 to the present, TruConnect has lost tens of millions of dollars in revenue from lost subsidies as a direct and proximate result of USAC's negligence.

11. Therefore, TruConnect brings this Complaint under the FTCA to hold USAC accountable for its failure to exercise reasonable care in operating the NV and NLAD platforms and to recover losses directly and proximately caused by USAC's misconduct.

## JURISDICTION

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the FTCA, 28 U.S.C. §§ 1346(b), 2671, *et seq.*, which vests exclusive subject matter jurisdiction of FTCA litigation in the Federal District Court.

13. USAC is the appropriate Federal agency within the meaning of the FTCA, because USAC is an independent establishment of the United States and/or a corporation primarily acting as an instrumentality or agency of the United States. USAC was established pursuant to a congressional mandate—the Telecommunications Act of 1996—and that law's implementing regulations.[1]  Its authority is limited to administering the Universal Service Fund programs, like

---

[1]  *See* 47 U.S.C. § 254; 47 C.F.R. § 54.701(a) ("The Universal Service Administrative Company is appointed the permanent Administrator of the federal universal service support mechanisms . . . ."); FCC, "Universal Service," *available at* https://www.fcc.gov/general/universal-service ("The Telecommunications Act of 1996 led to the creation of the Universal Service Administrative Company, or USAC[.]").

4118015.6

Lifeline. According to a Memorandum of Understanding ("MOU") between the FCC and USAC, the "sole purpose" of the USAC is "to assist the FCC in the administration of the USF programs (and such other programs as agreed upon and directed by the FCC), as an agent and instrumentality of the FCC. USAC has no corporate purpose other than as defined by FCC regulations, nor does it have any independent motive. Its operations are narrowly prescribed by FCC regulations and day to day FCC oversight."[2] USAC's bylaws incorporate the MOU.[3] In addition, "USAC is primarily funded by the USF," which the U.S. Congress authorized "as a permanent, indefinite appropriation" and "are federal resources held by the U.S. Treasury."[4] Accordingly, USAC is a Federal agency.

14.    Each of the negligent acts alleged in this Complaint arose from USAC's negligent administration of the ACP or Lifeline programs. USAC or its employees committed the tortious conduct while acting within the scope of their employment.

### VENUE

15.    Venue is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. §§ 1402(a) and 1402(b) because Plaintiff TruConnect resides in this judicial district and the events or omissions giving rise to its claims occurred in this judicial district.

### EXHAUSTION

16.    On April 25, 2025, TruConnect filed an administrative complaint with

---

[2]    Memorandum of Understanding Between the FCC and the USAC (Oct. 17, 2024), at p. 2, *available at* https://www.fcc.gov/sites/default/files/usac-mou.pdf.

[3]    Amended and Restated By-Laws of Universal Service Administrative Company, Art. VII, ¶ 5, *available at* https://www.usac.org/wp-content/uploads/about/documents/leadership/usacbylaws.pdf.

[4]    U.S. Government Accountability Office, *Administration of Universal Service Programs Is Consistent with Selected FCC Requirements* (July 2024), at p. 7, *available at* https://www.gao.gov/assets/gao-24-106967.pdf.

4118015.6

COMPLAINT

USAC, presenting its claims for negligent conduct in violation of the FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, *et seq.* ("Administrative Complaint").  On August 11, 2025, USAC denied the Administrative Complaint in its entirety.  TruConnect timely commenced this action within six months of notice of the final denial by USAC.  Therefore, TruConnect has exhausted its administrative remedies for the purpose of its claims against USAC under the FTCA.  28 U.S.C. § 2675(a).

17.    TruConnect was not required to appeal the denial of the Administrative Complaint by USAC to the FCC because its claims do not challenge an agency decision made pursuant to the Communications Act of 1934, 47 U.S.C. § 151, *et seq.*, or its implementing regulations and thus fall outside the scope of the FCC's appeal process.

## PARTIES

18.    TruConnect is a Delaware corporation with its principal place of business located at 1149 S. Hill Street, Suite H-400, Los Angeles, California 90015. TruConnect is a well-respected wireless company providing mobile telephone services to income-eligible residents, previously as part of the federally funded ACP program and currently through Lifeline.

19.    USAC is a not-for-profit institution established and designated by the FCC to administer the Universal Service Fund.  The sole purpose of USAC is to act as an agent and instrumentality of the FCC.  USAC is headquartered in Washington, D.C.

## NATURE OF THE CASE

**A.    TruConnect Provides Free Wireless Telephone Services to ACP- or Lifeline-Eligible Consumers.**

20.     TruConnect is a mission-driven wireless service provider that is authorized by USAC to participate in the ACP and Lifeline programs. It has been a provider of the ACP and Lifeline programs since 2012.

21.    TruConnect is committed to furthering universal service by offering

4118015.6

critical resources and high-quality customer service to underserved customers who have been overlooked by traditional providers. Since its inception, TruConnect has expanded wireless access for millions of low-income Americans through the provision of no-contract plans for voice, text, and data, and low-cost devices like smartphones, tablets, and hotspots.

22. TruConnect operates by purchasing wireless telephone services from carriers that have their own transmission facilities and then providing free access to these services to its subscribers.

23. TruConnect offers its services in all fifty states, as well as in Washington, D.C., Puerto Rico, and the U.S. Virgin Islands. In California, TruConnect is the largest provider of Lifeline services, and was the state's first approved wireless provider.

**B.      TruConnect Depends on the Reliable Operation of the NV and NLAD Systems to Enroll Consumers into ACP or Lifeline.**

24. When a customer subscribes to TruConnect's services, TruConnect checks the customer's eligibility for ACP or Lifeline. If a customer is eligible for ACP or Lifeline, then TruConnect can claim a subsidy for any services provided to that customer. Otherwise, TruConnect bears the full cost of providing the free wireless services to its customers.

25. TruConnect and other providers must use the NV and NLAD systems to determine whether their subscribers are eligible for ACP or Lifeline, pursuant to USAC's instruction and by orders of the FCC.

26. TruConnect uses a function known as a "verify call" to submit a customer's information to NV and/or NLAD. The NV and/or NLAD sends a response to the verify call about the customer's eligibility, which TruConnect then uses to determine if the subscriber needs to complete a new application in the NV, is eligible to transfer their benefit from their current service provider to TruConnect, or is eligible to receive a tablet from the ACP, among other things. Based on the

4118015.6

7

COMPLAINT

information returned in these verify calls and once the subscriber has completed any steps TruConnect has determined are necessary in reliance upon the information conveyed in the verify call, TruConnect enrolls the subscriber into NLAD.  A customer's successful enrollment into NLAD means that TruConnect will be able to claim a subsidy for that subscriber.

27.    TruConnect depends on USAC to operate the NV and NLAD systems with due care so that it can keep track of the number of subscribers for which TruConnect is entitled to be reimbursed.  TruConnect has no other method to verify a customer's eligibility for ACP or Lifeline other than through the NV and NLAD systems.  As such, TruConnect's ability to run its business relies on the provision of accurate eligibility and enrollment information by the NV and NLAD systems. Inaccurate information causes providers including TruConnect to seek reimbursement for customers who are not eligible for ACP or Lifeline benefits, or to not enroll a customer for ACP or Lifeline when the customer would have been eligible.

**C.    USAC Is Required to Maintain the NV and NLAD Systems, Which Exist to Benefit Providers Like TruConnect.**

28.    USAC is the administrator of the ACP and Lifeline programs.  USAC established the NLAD and NV systems in 2014 and 2018, respectively, for the purpose of administering the ACP and Lifeline programs.  As the administrator of ACP and Lifeline, USAC is required to maintain the NV and NLAD systems.

29.    The NV and NLAD exist for the benefit of providers like TruConnect. One of the core functions of the NV and NLAD systems is to be capable of accepting queries from a provider like TruConnect to enable them to determine if a prospective subscriber is already receiving Lifeline support from another provider.

30.    Unfortunately, USAC has failed to operate and maintain the NV and NLAD systems with reasonable care.  Due to USAC's failures, beginning around December 2022, technological issues began to plague the NV and NLAD systems.

4118015.6

8

**D.    Beginning in December 2022, USAC Negligently Delayed Processing California LifeLine Program Files, Which Prevented Eligible TruConnect Customers from Enrolling into ACP.**

31.    California operates a parallel "Lifeline" program that offers discounted or free mobile and/or internet services to low-income consumers.  The California LifeLine program uses an independent process to determine a consumer's eligibility for the federal Lifeline program, separate from the NV and NLAD.

32.    Every month, the Administrator of the California LifeLine program ("Administrator") submits files identifying consumers who were deemed eligible for the California LifeLine program as well as the federal Lifeline program to USAC. USAC then processes these files and updates the NV and NLAD systems with the information of the California LifeLine customers.

33.    It is important to providers like TruConnect that USAC promptly processes and updates the NV and NLAD systems with the information for the California LifeLine customers who are eligible for the federal Lifeline program, because a consumer who is eligible for Lifeline is also deemed eligible to receive ACP benefits, and providers like TruConnect can thus enroll that California LifeLine customer for ACP.

34.    The majority of TruConnect's customers participate in the California LifeLine program.

35.    Prior to December 2022, when TruConnect placed verify calls with the NV to verify a California LifeLine consumers' eligibility for ACP, the NV and NLAD systems would approve each California LifeLine consumer for ACP based on the information provided by the Administrator to USAC confirming the consumer's California LifeLine participation.

36.    However, from December 2022 through July 2023, USAC persistently delayed processing the California LifeLine Program files sent by the program's Administrator, even after the Administrator timely submitted the files to USAC.

4118015.6

9

COMPLAINT

37. In December 2022, TruConnect notified USAC that its verify calls were not returning accurate eligibility information for customers enrolled in California LifeLine. USAC informed TruConnect that there was a delay in processing the California LifeLine files. USAC later informed TruConnect that a production defect had caused the delay, *i.e.*, USAC's outdated systems had failed to process the California LifeLine files.

38. Once USAC had received the California LifeLine files from the Administrator, it owed TruConnect a duty of care to process the files into the NV and NLAD systems without delay.

39. USAC knew that TruConnect and other providers relied on the verification check through the NV to determine whether a consumer was enrolled in the California LifeLine program and thus eligible for receipt of ACP benefits. USAC should have foreseen that its failure to timely process the California LifeLine Program files would injure TruConnect, which had no alternative way to check the eligibility of the California LifeLine program participants.

40. Nevertheless, USAC negligently failed to correct the issue for ***seven months***.

41. USAC breached the duty of care owed to TruConnect by failing to timely update the NV and NLAD systems with the California LifeLine program files for ***seven months***.

42. As a result of USAC's breach, TruConnect lost approximately $1.4 million in subsidies from December 2022 through July 2023, because TruConnect was unable to enroll ACP-eligible customers in the month they became eligible.

**E.     From January to October 2023 and Throughout 2024 and 2025, USAC Negligently Failed to Conduct Routine Maintenance of Its Technological Infrastructure, Which Caused Failed Verify Calls and Total System Outages.**

43. From January to October 2023, USAC's systems suffered from a

4118015.6

10

COMPLAINT

variety of serious stability issues arising from USAC's error-laden technology and failure to adequately maintain those systems, including call failures.

44.    Between April 25, 2023 to October 23, 2023, TruConnect experienced over 100,000 call failures when it placed calls with the NV during this time period. TruConnect could not attempt to enroll subscribers for those failed calls into the NLAD, as providers are not allowed to enroll consumers in NLAD unless they have an active and approved eligibility decision from the NV.

45.    Because of the failed calls to the NV, USAC issued over 100,000 erroneous ACP and Lifeline eligibility denials for TruConnect consumers.

46.    USAC owed a duty of care to prevent system stability issues to the NV, including call failures, and thereby avoid causing economic injury to TruConnect based on failed calls to NV.

47.    USAC breached this duty by failing to prevent, and/or failing to remedy with due care, failed verify calls to the NV for nine months, including between April and October 2023.

48.    As a direct and proximate cause of USAC's breaches of due care, TruConnect lost approximately $10 million in revenue from April to October 2023.

49.    Additionally, USAC failed to conduct routine maintenance of its technological infrastructure to prevent service outages in 2024 and 2025.

50.    Between March 22, 2024, and April 4, 2024, USAC's systems suffered from a total of over 15 hours of service outages. The NV and NLAD systems were completely offline, and every verify call or enroll call that TruConnect attempted to make failed.

51.    Between February 10, 2025, and February 12, 2025, USAC's systems again suffered from service outages for nearly 38 hours.

52.    TruConnect was unable to obtain approval for Lifeline and/or transferring ACP subscribers during these outages.

53.    USAC, as the administrator of ACP and Lifeline, owed a duty to

4118015.6

11

COMPLAINT

providers like TruConnect to maintain the NV and NLAD and ensure that the systems' core functions were functioning.  Because the NV and NLAD are electronic systems, this duty necessarily extends to maintaining the technological infrastructure for the NV and NLAD.

54.    USAC's failure to conduct routine maintenance of the NV and NLAD systems in order to prevent system outages constituted a breach of the duty that USAC owed to TruConnect.

55.    As a direct and proximate result of USAC's breach, TruConnect estimates that it lost approximately $400,000 in revenue as a result of the outages between March and April 2024, and approximately $300,000 in revenue as a result of the outages in February 2025—or a total of approximately $700,000 in revenue as a result of losing Lifeline and/or transferring ACP subscribers.

**F.    In February 2024, USAC Negligently Modified the NV and NLAD Systems and Erroneously Prevented Over 120,000 Existing ACP Consumers from Transferring Their Benefits to TruConnect.**

56.    Beginning on February 8, 2024, the FCC implemented a freeze of all new ACP enrollments due to the expiration of funding for ACP ("February 5, 2024 Final Action").

57.    The freeze, however, did not prevent providers (such as TruConnect) from accepting new ACP households via benefit transfers.  As such, existing ACP enrollees could seek to transfer their benefits to a new provider, such as TruConnect.  USAC was required to accommodate such enrollees.

58.    To prepare for the FCC's freeze of new ACP enrollments, USAC undertook and rolled out modifications to the NV and NLAD on February 8, 2024.  Unfortunately, these modifications were technically defective and rendered the NV and NLAD systems unable to distinguish between transferring ACP households (who remained eligible for ACP benefits) and new enrollees (who were no longer eligible for ACP benefits).

4118015.6

12

COMPLAINT

59. From February 8, 2024, through approximately March 25, 2024, over 120,000 existing ACP enrollees sought to transfer their benefits from a different provider to TruConnect. Yet, when TruConnect placed "verify" calls for each of these individuals, the NV erroneously denied eligibility for *every* individual.

60. As a result, USAC wrongfully prevented TruConnect from accepting over 120,000 ACP transferees.

61. Because USAC undertook the modifications to the NV and NLAD, it owed a duty of care to TruConnect, a provider and beneficiary of the NLAD and NV, to ensure that the NV and NLAD were kept in good working order and that the modifications did not increase the risk of harm to TruConnect.

62. USAC breached its duty to TruConnect by rolling out defective modifications to the NV and NLAD systems that failed to distinguish between transferring ACP households and new ACP enrollees.

63. USAC's breach directly and proximately caused TruConnect damages of approximately $17,000,000 in lost revenue.

**G. Under California Law, USAC Had a Special Relationship with TruConnect and Owed TruConnect a Duty to Avoid Inflicting Injury by Its Negligent Operation and Modification of the NV and NLAD Systems.**

64. USAC owed a duty of care to TruConnect under California law because USAC had a special relationship with TruConnect. *See Biakanja v. Irving*, 49 Cal. 2d 647 (1958).

65. A duty of care to prevent the negligent infliction of purely economic loss on a plaintiff who is not in privity with the defendant arises when "policy considerations" weigh in favor of recognizing such a duty—a judicial assessment that typically requires consideration of a number of factors. *See So. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400–01 (2019). Those factors were set forth in *Biakanja v. Irving*, 49 Cal. 2d 647 (1958): "(1) the extent to which the transaction was intended to affect [or benefit] the plaintiff; (2) the foreseeability of harm to the plaintiff; (3)

4118015.6

13

COMPLAINT

the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm." *Id.* at 650.

66.    The first two *Biakanja* factors—(1) an intent to affect the plaintiff and (2) foreseeability of harm to the plaintiff—are the most important.  Where, as here, the defendant's tortious misconduct easily satisfies the foreseeability requirement, the critical focus is on the extent to which the transaction was "intended to *affect or benefit*" the plaintiff or "a class of which the plaintiff is a member."  *Centinela Freeman Emergency Med. Ass'n v. Health Net of Cal., Inc.*, 1 Cal. 5th 994, 1014–15 (2016) (emphasis added).  While a third party beneficiary of a transaction satisfies the "intended to . . . benefit" prong, the first *Biakanja* factor may also be met by showing that the transaction was "intended to affect" the plaintiff.  *Id.* at 1014–15.

67.    Each of the *Biakanja* factors supports finding a duty of care that USAC owed to TruConnect.

a.    **Intent to affect or benefit.**  A core function of the NV and NLAD is to be capable of accepting API calls from providers to enable them to determine if a prospective subscriber is already receiving Lifeline support from another provider.  Therefore, the operation, maintenance, and modification of the NV and NLAD are for the benefit of providers including TruConnect.

b.    **Foreseeability.**  Harm to TruConnect resulting from USAC's negligence was highly foreseeable because the NV and NLAD systems exist for the benefit of providers and providers must use the NV and NLAD to enroll their customers in ACP or Lifeline.

c.    **The degree of certainty / closeness of the connection.**  These factors are satisfied because USAC's negligent operation of the NV and NLAD systems and negligent modification of the platforms directly resulted in the improper denial or failure to approve TruConnect's qualified applicants or

transferring enrollees.

d.   **Moral blame.**  The moral blame factor is satisfied because: (i) USAC not only delayed processing California LifeLine files but attempted to shift blame to the program's Administrator – specifically by claiming that the Administrator had not timely submitted the files to USAC – when USAC knew that the Administrator had timely submitted the California LifeLine files to USAC and that USAC's systems had in fact caused the delay; (ii) USAC repeatedly failed to correct and prevent call failures to the NV and complete system outages; and (iii) USAC launched modifications to the NV and NLAD systems prematurely without confirming that the modifications were not defective.

e.   **Prevention of future harm.**  This policy weighs heavily in favor of imposing a duty on USAC.  Exposing USAC to liability for its negligent maintenance, operation, and modifications of the NV and NLAD systems provides the necessary incentive for USAC to prevent future system failures and to internalize the costs of such negligence.

**H.   TruConnect Has Suffered Nearly $30 Million in Damages.**

68.   USAC's negligent actions have significantly harmed TruConnect. From April 2023 to the present, TruConnect has lost nearly $30 million in revenue. Additionally, TruConnect has suffered damages from time and resources it had to spend to review, address, and remedy the issues caused by USAC.

**FIRST CLAIM FOR RELIEF**

**(Negligence)**

69.   Plaintiff TruConnect realleges and incorporates by this reference the allegations of Paragraphs 1 through 68, inclusive, as though fully set forth herein.

70.   Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, Defendant USAC is liable in tort where a private party would be liable under applicable state law.

///

4118015.6

15

COMPLAINT

71.    At all relevant times, Defendant USAC and its employees, agents, and contractors acting as employees for the purposes of the FTCA were acting within the course and scope of their federal employment and/or agency.

72.    Defendant USAC had a special relationship with TruConnect and thus owed TruConnect the duty to exercise reasonable care under the circumstances. Those duties included the duty to promptly process California LifeLine program files once received by the program's Administrator; conduct routine maintenance of the NV and NLAD systems to ensure that they received API calls and to prevent total system outages; and undertake and roll out modifications to the NV and NLAD systems without increasing the risk of harm to providers, including TruConnect who must use the NV and NLAD to determine whether their customers are eligible for ACP or Lifeline.

73.    Defendant USAC breached its duties of care to TruConnect in one or more of the following ways, any one of which independently and/or collectively was a proximate cause of TruConnect's injuries:

a.    Beginning in December 2022, USAC negligently delayed processing California LifeLine program Files, which prevented eligible TruConnect customers from enrolling into ACP.

b.    From January to October 2023 and throughout 2024 and 2025, USAC negligently failed to conduct routine maintenance of its technological infrastructure, which caused failed verify calls and total system outages.

c.    In February 2024, USAC negligently modified the NV and NLAD systems and erroneously prevented over 120,000 existing ACP consumers from transferring their benefits to TruConnect.

74.    Defendant USAC's negligent acts and omissions were not grounded in policy judgment, or violated specific, mandatory directives leaving no discretion.

75.    Defendant USAC's negligent acts and omissions were a substantial factor and proximate cause of TruConnect's injuries.

4118015.6

16

COMPLAINT

76.    As a direct and proximate result, TruConnect lost nearly $30 million in revenue, as well as other damages in an amount to be proven at trial.  Additionally, TruConnect suffered damages from time and resources it had to spend to review, address, and remedy the issues caused by USAC.

77.    TruConnect seeks only those damages available under the FTCA, including compensatory damages, and does not seek punitive damages or prejudgment interest to the extent barred by 28 U.S.C. § 2674.

## **PRAYER FOR RELIEF**

TruConnect prays for judgment against the United States for:

A. Compensatory damages in an amount according to proof and consistent with the Federal Tort Claims Act;

B. Attorney's fees as allowed by law;

C. Costs of suit as allowed by law;

D. Post-judgment interest as allowed by law; and

E. Such other and further relief as the Court deems just and proper.

DATED:  February 11, 2026

Paul S. Chan
Julia B. Cherlow
Heejin H. Hwang
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP


By: _____
              Julia B. Cherlow
Attorneys for Plaintiff TruConnect
Communications, Inc.

4118015.6

17

COMPLAINT